Judge Uuderwooj)
delivered the opinion of the court.
Smith and Thompson being joint owners of two hundred acres of land, on which there were mills and a forge, they holding Prather’s bond for a title to the land, sold their interests to Fisher by contracts made at different times. Smith sold his moiety *189 on the 27th of February, 1816, and executed his obligation of that date, binding himself to cause a title to be conveyed to Fisher within twelve months. son sold his moiety on the 2 M of June, 1816, and on that day he and Smith assigned to Fisher the obligation which they held on Prather for a title to the two hundred acres, bearing date in December, 1813, and stipulating to convey on or before the 1st day of January, 1816. Smith’s assignee having obtained judgments against Fisher for part of the purchase money, he, in October, 1819, filed bis bill in the Pulaski circuit court, injoining the judgments upon the ground, that neither Smith, Thompson or Prather were able to make a title; that J. Stone, by a previous contract with Prather, was entided to half of the land, and that a fraud had been practised on him in concealing the claim of Stone.
Wherefore, he prayed for a rescisiou of the contract. The cause was removed to Casey, thence io Rockcastle, where, in October, 1822, the complainant, Fisher, obtained leave to amend his bill, and did so, by introducing a new ground of equity, to-wit: •‘that his sole object in making the purchase, was to engage in the manufacture of iron, that Smith and Thompson were well skilled in the business, and particularly well acquainted with the place, and the prospect of success for such an undertaking; that they represented to the complainant, that iron in abundance could be manufactured upon the premises profitably, to any one who had capital and enterprize; that they for want of capital, were unable to carry on the business; that they had no doubt the establishment was worth at least ,$20,000; that he, the complainant, was ignorant of the art of making iron, and confided most implicitly in the correctness of the statements made by Smith and Thompson, and under a belief of their correctness, entered into the contracts; that he knew nothing of the goodness or indiiference of the prospect from appearances, and therefore, relied on the truth of their statements; that they had complete knowledge from actual experiment, that iron could not be made at the place so as to yield any profit to the proprietor, be his enterprize and industry what it might; that the said Smith and Thompson practised on the complainant a wicked and wilful fraud, declaring to their com *190 fidcntial friends, both before and since the complainant’s purchase, that it was out of tue power of the art of man to succeed at iron making at the place sold the complainant, and requesting particularly, tiiat these communications to their friends should not- be made known to the complainant.” To the filing of this amendment, tire defendants objected, but their objections were overruled, and they excepted. The answers of the defendants denied the material allegations upon which the equity of the complainant depended in both the original and supplemental bills. The court annulled the contracts, and Smith and Thompson have brought up the case for revision by writ of error.
In respect to the ground of equity assumed by the* complainant in his original bill, to-wit: a defect of title on account of Stone’s claim, but litte need be said. It appears that Fisher consented to accept the title from Prather after a lawsuit in which Fisher recovered for Prather’s failure to convey by the stipulated time; and it does not appear that Stone’s claim was valid, or that any fraud was practised by Smith and Thompson, by concealing from Fisher the nature of Stone’s claim. There is no cause made out for re-scinding the contracts upon the matter alleged in the original bill.
If the decree of the circuit court can be sustained, it must be upon the matter brought to view in the amendment. We a>.e not disposed to put the amendment out of view, because of the late period at which, it was offered. Considerable latitude ought to be allowed for the exercise of the discretion of the circuit courts in preparing causes for trial, and we will not interfere where the indulgence has been extended with a view, the better to reach the justice of the case, except incases of palpable abuse. If the defendants, now plaintiffs in error, actually perpetrated a fraud, against the effects of wuich the chancellor can relieve, and their fraud is manifest by what appears on the record before us, it would be doing violence to our consciences to refuse to look into it, because the complainant had not with the utmost diligence complained of it. To refuse to do a suitor justice, because he was slow in presenting the truth of his case, would be to punish his laziness by rewarding the crime *191 of bis opponent. It must be a rare case wbex’e this principle should operate, if indeed the?-e be any such. We shall therefore, proceed to inquire whether there be any grounds for relief upon the. allegations of the supplemental bill, regard,ng the objections made against the riling of it as properly overruled by the court.
There seems to have been an attempt made by the complainant to regard Smith and Thompson in the' light of partners, so as to render each responsible for the conduct of the other, touching the contracts which they severally made with him. By so doing, the frauds of Thompson are to he charged to Smith and vice versa. It is our opinion that the contracts of Smith' and Thompson with the complainant, are .entirely distinct, and that neither nor the conduct of either individual sho ild have the least operation upon the other. It is true that Smith and Thompson may be regarded as joint owners and partners in one sense, but there docs not appear to have been any limitation or restriction on the right of either to sell his interest in the land, mills and forge. Accordingly, when Smith sold, In February, 1816, Fisher, from that time, was regarded by Thompson, although reluctantly, as he stales, as standing in the shoes of Smith. It is true that the assignment of Prather’s bond seems to have been a joint act, hut this cannot destroy 1he essential difference and distinct nature of the two contracts. Smith and Thompson were to receive different sums for their respeciive interests. There was in fact nothing done by them as a joint act, hut the assignment which seems to be the only writing which was executed by Thompson, and was doubtless designed by Smith to facilitate Fisher’s procuring the tille from Prather, and not intended to make him panakerin any fraud which Thompson may have practised, or to render such fraud operative, by relation, to taint his contract of the preceding February.
In the proposed investigation, therefore, the conduct and contracts'of Smith and Thompson must be reviewed separately. First, then, as it relates to the contract and conduct of Smith. It is not proven that he ever expressed any opinions, or made any representations to Fisher, relative to the ore or ore banks, from which ore was dug for the use of the works, except on *192 decree. o : S ^ 'G o &) O <n t>v c ts ^15 IT 04) $ - ® +* ¿"S ^ O A,* <o *s ^ H J5 „ i í-, g o L - tí r CC ■+J rri ^ H'-ts r» ^ P cn •-} ro ^ "-<3 £ o «¡ 2 o .5 sí d) ¿4 O ÜrG CC O O a s #5 cPsT l O ril O O-i’c te í «5 ^ 1 ■& Í2 §'€ ? ?• s “ g & g .3 - "-S a> o 3 ; cr» f9 ' S c ¡L- § J ® O /T> 2 ~ O % c o5 hv d 2. a w bf fj £. ® o> j. 2. 2 3 o ^ Q h 2 á ^ á ^ rt- * ZTC? - o ^ & cc'< p? ÍS. C5 etc ^ r-w-0.1 » o' IT. ^ ir. o p O co 3 p a ^ 5* é r- o ^ cl g 5 g & c- ^ ••d ^ o p go c § “ ao <( ct> *+> 3 - O gi *s§1!| CL D v, M fo o 5p 3. n - - d , G ¿ bij p--; ft5 q í a | 3^5 ra ‘IS. e o cJ O Li O 4S o 75 G § 2 o‘ ■ o , O SL CS _ -O Ct> Q O ^ C/ . CL 5 á a> 52, B >-• O ^trpi g K *13 51
Against Thompson it was proved, that he told a, witness, who asked why he so'd his inierest, that “the ore was good for nothing, and alJ i.he men in the world could not make good iron out of it, and the place would never be worth a damn.” About the time he contracted with Fisher, he said to another witness, that “the iron ore was good for noíhing, and he could not make iron out of it worth a damn, that he never had made any good and never should.” To another witness he said, a few days before he sold to Fisher “the ore is not sufficient, and the place will go to nothing.” lie employed another witness to dig ore in May, 1816. The witness resolved to quit, because the prospect was bad. Thompson told him “to dig on and he would pay him for it, and to say nothing about it and he would satisfy him for it;” but nothing was said between him and the witness, about representing the prospect favorable to Fisher, or to any one else. The foregoing is the substance of all the evidence against Thompson, calculated to stamp fraud upon his conduct. Before conside;ing its effect, it may be proper to state some other facts which appear in proof. Smith and Thompson put their iron works, or the forge, in operation in December, 1815 Fisher, on buying the interest of Smith, in February, 1816, took possession of his moiety, and he and Thompson continued to manufacture iron jointly, until June, 1816, when Fisher bought out Thompson. At the time Smith sold out. *193 only two or three ore banks had been used. At the time Thompson sold out, -seven ore banks had' been used and opened; None of the ore banks were situated on the two hundred acres of land sold to Fisher. According to several witnesses, most, if not all the hills or mountains round about the forge, indicated the existence of iron ore. It was not shown that the ■ore had been exhausted at any one of the ore batiks 'which had been used. One witness .gave it as his opinion, that the ore contained in the seven banks which'had been used, was not sufficient to keep the forge in operation “alength of time,” and yet the same witness states that “there is a good appearance of ore at all of them'.” After Fisher bought Thompson^ interest, he continued the manufacture of iron until March, 1817, when a flood in Buck creek washed away the forge. About 200 lbs, of iron per day were manufactured, some “tolerable good, and some not good,” in the language of the witness. Fisher commenced rebuilding the forge, and went on. until suits were instituted against Mm.
It is obvious, from the slightest inspection of the foregoing evidence, that there is no part 'of it which shows- that Thompson made any misrepresentation, fraudulent or innocent, to Fisher, relative to the quantity or quality-of the ore, or the prospect of realizing afortune by the manufacturing-of iron. It does not •appear that he said any thing to Fisher on these subjects. What Thompson said toothers could not have misled Fisher, unless they had told him. If those who detail conversations with Thompson, had reported to Fisher what they state in their depositions, the information instead of misleading and inducing him to enter into a ruinous contract, would have been well calculated to produce the contrary effect. There Is not the semblance of evidence from which the conclusion can be drawn, that Thompson made any false suggestions, whereby Fisher was deluded. If Thompson has been guilty of any fraud, it must consist in the fraudulent concealment of the truth.
It is clear from the evidence, that it was Thompson’s opinion, that the ore was defective, both in quantity and quality, that good iron could not he made of it, and that the establishment must fall into disrepute and *194 ru'n. Was lie bound to communicate this opinion to Fisher? If he failed to do so, was it a fraud for which the contract should he rescinded? It does not appear from the evidence, that Fisher set any value on Thompson’s opinion. He would have shown what opinion Thi.mpscn expressed to him, if the contract had been made under the influence of that opinion. It cannot be said then, that Fisher put any value upon Thompson’s opinion. Are we to lake it, that his opinion possessed an intrinsic value, and that he was bound to communicate it without solicitation? We think that Thompson was not legally culpable, we say nothing as to its morality, in remaining silent; whatever his opinion may have been concerning the ore, and the iron made out of it. The subject of the contract was two hundred acres of land, wilh its appurtenances. It is true that iron ore in abundance, of good quality, and easy to be procured was essential to the success of (he iron manufactory; hut in purchasing the forge and two hundred acres of land, it was the duty and the business of Fisher, to ascertain where, and how, suitable materials were to be procured.
Ven Joe has no right to expect information of vendor as to any thing but the subject matter of the contract.
It is no fraud to remain silent to one, rvho has no right to expect mfour.ation fiom ir.
If a ivoollen manufactory is sold, the purchaser may as well charge the vendor with fraud in the sale, bc-cause he did not inform him that the flocks of sheep in the neighborhood rvere indifferent, and that woo] was scarce and not easily obtained, as for Fisher to charge-fraud on Thompson, because lie did not abuse the ore and iron to him as he did to others. Fisher had no right to expect information frem Thompson, as to any tl-ing but the two hundred acres of land, and its appurtenances. Nor had Thompson a right to enquire into the uses which Fisher intended to make of them, after he became sole proprietor. “It is no fraud to remain silent to one who has no right to expect information from us;” Taylor &c. vs. Bradshaw, VI Monroe, 148; Mills’ heirs vs. Lee, &c. Ibid, 99.
It is perfectly evident that Fisher had (he same means of judging of li.e quantity and quality of the ore that Thompson Lad, We are unacquainted with any act by which the quantity and quality of iron ore in the bowels of a particular hill or mountain can be calculated with certainly, until it has been dug ou( entirely.
Owsley, Cunningham, and Quarles, for plaintiffs; Mills and Brown, for defendants.
Perhaps no two miners or smelters could be found. who would exactly agree upon such subjects. In this state of uncertainty, both parties having the knowledge of the facts, the conjectural estimates and ■opinions of Thompson could not amount to fraud, even if they had been expressed; unless fraud might be inferred from his contradictory státements. In the present case, however, there docs not appear to have been any failure of ore, and a case is not made out, on which relief could be given to Fisaer, even if it had been proved that Thompson assured Fisher that it abounded. In every view which we have been enabled to take of the case, we cannot perceive the existence of any fraud, which justifies the r escisión of the contract. It is shown by one witness, that Fisher rather boastingly spoke of his success in manufacturing iron so fast; and it is proven by many, that not a word of complaint was heard, until after the flood came. Encountering the expense of rebuilding, which was resolved on, is a strong indication- that Fisher, after that calamity, believed that iron might be manufactured successfully and profitably.
We see no analogy between the case of Bowman vs. Bates, I Bibb, 52, and this. There was, in that case, a fraudulent concealment of the truth, as to a salt well upon the land which constituted the subject of the contract; in this, the concealment complained of,' relates to the mineral wealth of hills ©r mountains unconnected with the subject of the contract, and having no relation to it, further than to furnish materials for a particular manufactory, erected on the land sold. We again repeat, that it was the concern of Fisher to-look to the prospect of supplies. His claim to rescind-the contract would have been equal to what it is, had: he shown that there was uniformly a great scarcity of provisions in the neighborhood of the forge, that they cost enormous-prices^ and that in consquence, he could not employ hands there profitably; all which Thompson had-failed to make known to--him!
The decree of the circuit court is reversed with costs, and the cause remanded, with directions to dissolve the injunctions with damages, and dismiss thq hill with costs.
Note, Chief Justice Uobkhtson did not sjt in this case